**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-10-0000120**
**04-JUN-2013**
**09:52 AM**

NO. CAAP-10-0000120

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOHN K. IOPA, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 08-1-443)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Defendant-Appellant John K. Iopa (Iopa) appeals from the Judgment of Conviction and Sentence entered on October 28, 2010 by the Circuit Court of the Third Circuit (circuit court)[1] convicting him of one count of Robbery in the First Degree in violation of Hawaii Revised Statutes (HRS) § 708-840(1)(b) (Supp. 2012),[2] and/or § 702-221(2)(c) (1993 Repl.)[3] and/or § 702-222(1)

---

[1] The Honorable Glenn S. Hara presided. By order of the circuit court, Iopa's sentence has been stayed pending this appeal.

[2] HRS § 708-840(1)(b) states, in relevant part:

§708-840 **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
. . .
    (b) The person is armed with a dangerous instrument and:
(continued...)

(1993 Repl.).[4]

On appeal, Iopa challenges his conviction by raising
the following points of error: (1) he was denied his due process
rights because the pre-trial identifications of him were tainted
by suggestiveness; (2) he was denied his due process rights
because the State failed to present clearly exculpatory evidence
to the grand jury; (3) he was denied his right to due process and
equal protection of the laws because the circuit court failed to
enumerate each element of the substantive jury instruction as to
conduct, result of conduct, and attendant circumstances; and
(4) the circuit court erred in denying his motion for judgment of
acquittal.

We initially note that the opening brief fails to
comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.

---

[2](...continued)
      (i)   The person uses force against the person of anyone
            present with intent to overcome that person's physical
            resistance or physical power of resistance; or
      (ii)  The person threatens the imminent use of force against
            the person of anyone present with intent to compel
            acquiescence to the taking of or escaping with the
            property[.]

[3]  HRS § 702-221(2)(c) (1993 Repl.) states, in relevant part:

   §702-221 Liability for conduct of another. . . .
   (2)   A person is legally accountable for the conduct of
         another person when:
         . . .
   (c)   He is an accomplice of such other person in the
         commission of the offense.

[4]  HRS § 702-222(1) (1993 Repl.) states, in relevant part:

   §702-222 Liability for conduct of another; complicity. A
person is an accomplice of another person in the commission of an
offense if:
   (1)   With the intention of promoting or facilitating the
         commission of the offense, the person:
         (a)   Solicits the other person to commit it; or
         (b)   Aids or agrees or attempts to aid the other person in
               planning or committing it; or
         (c)   Having a legal duty to prevent the commission of the
               offense, fails to make reasonable effort so to do[.]

First, HRAP Rule 28(b)(3) requires "a copy of the judgment, decree, findings of fact and conclusions of law, order, opinion or decision relevant to any point on appeal" to be appended to the appellant's opening brief, unless otherwise ordered by the court. Iopa fails to attach to his opening brief the judgment or any orders relevant to this appeal. Second, in violation of HRAP Rule 28(b)(4), Iopa's asserted points of error fail to state where in the record alleged errors occurred and where in the record alleged errors were objected to or the manner in which the alleged errors were brought to the attention of the circuit court. Third, one of Iopa's points of error challenges jury instructions but, in violation of HRAP Rule 28(b)(4)(B), Iopa fails to quote or identify the challenged jury instruction(s) or to indicate if any objection was made by Iopa at trial. Because of this court's preference to address cases on the merits if possible, we will consider Iopa's points of error to the extent they can be discerned. However, Iopa's counsel, **Vaughan S. Winborne Jr.**, is put on notice and cautioned that future non-compliance with HRAP Rule 28 may result in sanctions.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Iopa's points of error as follows:

(1) Iopa sought to preclude admission of evidence about the pre-trial identification of him by joining in co-defendant Kawa Salas's "Motion to Suppress the Pre-Identification of Defendants; Motion to Dismiss Indictment." The circuit court did not err in denying the motion to suppress the pre-trial identification of Iopa.[5]

---

[5] In reviewing the circuit court's denial of Iopa's motion to suppress, we consider both the evidence presented at the hearing on the motion and at

(continued...)

Following multiple hearings on the motion to suppress, the trial court denied the motion and issued findings of fact (FOF), conclusions of law (COL) and an order. The circuit court's detailed FOFs set forth specifics regarding the incident at the complaining witnesses' (CWs) campsite, the CWs' interaction with police after the incident and away from the campsite, and the circumstances when three of the CWs -- Scott Desa (Desa), Lucas Mead (L. Mead), and Benjamin Mead (B. Mead) -- returned to the campsite, at which time Desa, L. Mead, and B. Mead identified Iopa and Salas as having been involved in earlier confronting and accosting the CWs. The circuit court's findings expressly state that Desa, L. Mead, and B. Mead went back to the campsite to pack up and collect their belongings, and that their focus was on making sure that they had all of their camping gear. The circuit court further found that, upon hearing Iopa speaking and recognizing Iopa and Salas, Desa, L. Mead, and B. Mead approached police "of their own initiative" and identified Iopa and Salas as being the individuals who had confronted the CWs earlier. Moreover, in FOF 38, the circuit court found:

> 38. The on scene identification of Defendant Salas and Defendant Iopa was made independent of any officiated identification procedure. Desa, L. Mead and B. Mead returned to the scene to collect and catalogue their possessions and not for the purposes of taking part in a police orchestrated identification procedure. There was no coercion on the part of the police, or any effort to influence or to direct the identification of the Defendants by the victims. Desa, L. Mead and B. Mead each made individual identifications based on their respective perceptions and independent recollection of events. There is no evidence of collusions among the victims to identify Defendant Iopa and Defendant Salas as participants in the confrontation. There was no discussion between victims to confirm and/or corroborate the identification.

---

[5](...continued)
trial. <u>State v. Vinuya</u>, 96 Hawai'i 472, 481, 32 P.3d 116, 125 (App. 2001).

4

The circuit court thereafter made the following relevant COLs:

1. The on-scene identification of Defendant Iopa and Defendant Salas on September 1, 2008 was made spontaneously by Desa, B. Mead, and L. Mead, and not as a result of any officiated identification. There was no "show up".

2. Even if the on scene identification was a "show up", it was not impermissibly suggestive. State v. Okumura, 78 Haw. 383, 391, 894 P.2d 80, 88 (1995).

3. Even if the on-scene identification was a "show up" and if it was impermissibly suggestive, it was nonetheless reliable under the totality of the circumstances. State v. Masaniai, 63 Haw. 354, 365 and 362, 628 P.2d 1018, 1026 and 1025 (1981).

4. The photographic lineup identification of Defendant Iopa and Defendant Salas by Desa and L. Mead was not impermissibly suggestive. There is no substantial likelihood of irreparable misidentification. Biggers, 409 U.S. 188, 197, 93 S.Ct. 375, 381 (1972).

5. Because the photographic arrays do not evidence suggestiveness and the procedure employed to conduct the photographic lineup was not suggestive, the Court need not address the reliability of the identifications. State v. Malani, 59 Haw. 167, 170, 578 P.2d 236, 238 (1978).

6. Even if the photographic arrays were suggestive, under the totality of the circumstances, including this Court's evaluation of the credibility of the witnesses, the identification of the Defendants by Desa and L. Mead are reliable.

Questions regarding the suggestiveness and reliability of a pre-trial identification are questions of law reviewed *de novo* on appeal. State v. Okumura, 78 Hawai'i 383, 391, 894 P.2d 80, 88 (1995), *abrogated on other grounds by* State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012).

When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pre-trial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of

> attention, and the elapsed time, the witness's identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury.

State v. Araki, 82 Hawai'i 474, 484, 923 P.2d 891, 901 (1996)

(quoting Okumura, 78 Hawai'i at 391, 894 P.2d at 88).  However,

> answering these questions involves determinations of fact by the court.  Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the "clearly erroneous" standard.  A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

Okumura, 78 Hawai'i at 392, 894 P.2d at 89 (citations and internal quotation marks omitted).

Iopa does not challenge the circuit court's FOFs and the FOFs do not appear to be clearly erroneous.  Thus, based on our review of the record and the findings of the circuit court,[6] the motion to suppress was properly denied.

An out-of-court identification should only be suppressed where the identification procedure was impermissibly suggestive and "gave rise to a very substantial likelihood of irreparable misrepresentation."  State v. Malani, 59 Haw. 167, 170, 578 P.2d 236, 238 (1978) (block quote format altered; citations omitted); see also Neil v. Biggers, 409 U.S. 188, 198 (1972).  Otherwise, "the weight of the identification testimony and the credibility of the witnesses [are] for the jury to determine."  Araki, 82 Hawai'i at 486, 923 P.2d at 903 (quoting State v. Masaniai, 63 Haw. 354, 365, 628 P.2d 1018, 1026 (1981)).  Although the CWs' testimony as to the on-scene identification varies somewhat, substantial evidence exists to support the circuit court's factual findings that the identifications were

---

[6]  Iopa does not expressly challenge any of the findings of fact supporting the court's legal conclusions nor does he specify which conclusions of law were error.  Unchallenged findings of fact are binding on this court.  State v. Rapozo, 123 Hawai'i 329, 334 n.4, 235 P.3d 325, 330 n.4 (2010).

not the result of suggestive procedures or actions employed by the police. Given the evidence and the unchallenged findings, the circuit court properly concluded as a matter of law that the on-scene identifications were not suggestive. As such, this court need not reach the question of the reliability of such identifications. See State v. Mitake, 64 Haw. 217, 221, 638 P.2d 324, 327 (1981).

Likewise, the circuit court properly concluded that the photographic lineup identifications were not impermissibly suggestive. We therefore reject Iopa's argument that these identifications were tainted by the earlier on-scene identification. Because Iopa fails to show that the photographic lineup identifications were impermissibly suggestive, we need not reach the question of the reliability of such identifications. See id.

(2) Iopa next contends that his due process rights were violated because the State failed to present exculpatory evidence to the grand jury.[7] In addressing this issue, the circuit court denied Iopa's Motion to Dismiss Indictment.[8] This

---

[7] Iopa argues that "[t]he statements of Wayne Leighton-Young, Raina Midel and Damien Bentosino, and the admissions by Kameron Wilbourne and Rylan Torres-Acia all inculpate Wilbourne and Torres-Acia as opposed to John Iopa and Kawa Salas." Iopa does not specify which particular statements of the witnesses to which he refers, nor does he provide citations to the record containing such statements.

[8] With regard to Iopa's Motion to Dismiss, the trial court concluded in relevant part that:

> 7. There was no prosecutorial misconduct at the Grand Jury proceedings.

> 8. The prosecutor did not fail to present clearly exculpatory evidence at the Grand Jury that would warrant dismissal. Evidence that Damien Bentosino identified Kameron Wilbourn and Kameron Wilbourne [sic] and Raylan Torres-Acia as being responsible parties is not clearly exculpatory in light of the live testimony of the victims at the Grand Jury positively identifying Defendant Salas and Defendant
> (continued...)

court reviews the circuit court's ruling on a motion to dismiss indictment for an abuse of discretion. State v. Akau, 118 Hawai'i 44, 51, 185 P.3d 229, 236 (2008); see also State v. Wong, 97 Hawai'i 512, 517, 40 P.3d 914, 919 (2002).

With regard to claims of prosecutorial misconduct at a grand jury proceeding, the Hawai'i Supreme Court has stated that

> [a] grand jury proceeding is not adversary in nature. An application of this principle is found in the rule that an indictment may not be attacked on the ground of the incompetency of the evidence considered by the grand jury, where prosecutorial misconduct is not involved. The function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence.
>
> On the other hand, an indictment that is the result of *prosecutorial misconduct or other circumstances which prevent the exercise of fairness and impartiality by the grand jury* may be successfully attacked.

State v. Chong, 86 Hawai'i 282, 288-89, 949 P.2d 122, 128-29 (1997) (internal citations omitted). The Hawai'i Supreme Court has

> rejected an approach to claims of prosecutorial misconduct that would require the prosecutor to put before the grand jury any and all evidence that might tend to exculpate the defendant, or that would merely tend to negate guilt, and has concluded a court should dismiss an indictment only when the prosecutor failed to present evidence that clearly would have negated guilt or presented evidence that would undermine the authority of the grand jury to act at all.

Wong, 97 Hawai'i at 526, 40 P.3d at 928 (internal citations, quotations marks, and brackets omitted) (emphasis added). The focus of the court's inquiry is "the prejudicial character of the prosecutor's conduct[,]" and must not involve passing upon the credibility of grand jury witnesses nor upon the competency or

---

⁸(...continued)
Iopa as participants in the confrontation with the victims in front of Desa's tent on August 31, 2008/September 1, 2008.

adequacy of the evidence adduced.  Chong, 86 Hawai'i at 289 n.3, 949 P.2d at 129 n.3 (citation omitted).

Iopa fails to meet his burden of proving prosecutorial misconduct.  See State v. Griffin, 126 Hawai'i 40, 53, 266 P.3d 448, 461 (App. 2011).  The evidence that Iopa argues should have been presented was not clearly exculpatory.  This evidence included witness statements implicating suspects other than Iopa and Salas.  These statements did not "clearly negate" Iopa's guilt on the charges.  First, there is evidence, and the circuit court found, that males other than Iopa and Salas were involved in the incident.[9]  Second, given that Iopa was charged also with accomplice liability, the involvement of others would not have clearly negated Iopa's guilt.  Therefore, the circuit court properly denied Iopa's Motion to Dismiss.

(3)  Iopa fails to demonstrate that the unobjected-to jury instructions were in error.

"With respect to jury instructions, it is the duty of the trial court to ensure that the jury is properly instructed." State v. Kikuta, 125 Hawai'i 78, 90, 253 P.3d 639, 651 (2011). There is "a presumption that unobjected-to jury instructions are correct[.]"  State v. Nichols, 111 Hawai'i 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006).  "[I]f the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial."  Id. (citation, internal quotation mark and emphasis omitted).

---

[9]  Iopa does not specifically challenge any of the circuit court's findings of fact, and thus, these findings are binding on this court.  See Rapozo, 123 Hawai'i at 334 n.4, 235 P.3d at 330 n.4.  FOF 18 states that "[a]bout 7 feet behind Defendants Salas and Iopa were other males, one with a baseball bat or wooden object resembling a baseball bat."

Iopa does not identify the particular jury instruction(s) he is challenging on appeal. Rather, Iopa argues generally that the trial court improperly instructed the jury because each element of the offense was not characterized as conduct, attendant circumstances, or results of conduct, which resulted in the jury guessing as to which state of mind applied to each element. Iopa does not provide any authority requiring the court to characterize each element in its instructions as he suggests, nor does he assert that the elements of each offense were otherwise defective or erroneous. Therefore, Iopa has failed to demonstrate that the jury instructions were erroneous.

(4) In Iopa's final point of error, he contends that the circuit court erred in denying his motion for judgment of acquittal. In this regard, he argues on appeal that there is insufficient evidence as to the theft component of the Robbery in the First Degree offense. Specifically, Iopa asserts that "[m]erely asking if you have wallets, drugs, juice, etc. is not the same as saying, 'if you do not give me your wallets, drugs, juice, etc. harm will come to you.'" Iopa argues that the evidence shows an intent to get the CWs to relocate their campsite or "just to raise cain[,]" but that the evidence was not sufficient to show an intent to steal. Iopa's arguments are not meritorious.

There was sufficient evidence to support the theft component of the Robbery in the First Degree offense and the circuit court did not err in denying the motion for judgment of acquittal. When reviewing the grant or denial of a post-verdict motion for a judgment of acquittal,

> we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima

> facie case requires substantial evidence as to every
> material element of the offense charged. Substantial
> evidence as to every material element of the offense charged
> is credible evidence which is of sufficient quality and
> probative value to enable a person of reasonable caution to
> support a conclusion. Under such a review, we give full
> play to the right of the fact finder to determine
> credibility, weigh the evidence, and draw justifiable
> inferences of fact.

State v. Timoteo, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997) (quoting State v. Jhun, 83 Hawai'i 472, 481, 927 P.2d 1355, 1364 (1996) (emphasis added)).

The theft component for Robbery in the First Degree requires that the prosecution prove that Iopa was "in the course of committing theft." HRS § 708-840(1)(b). In turn, HRS § 708-842 (Supp. 2012) provides that:

> §708-842 Robbery; "in the course of committing a
> theft". An act shall be deemed "in the course of committing
> a theft or non-consensual taking of a motor vehicle" if it
> occurs in an attempt to commit theft or non-consensual
> taking of a motor vehicle, in the commission of theft or
> non-consensual taking of a motor vehicle, or in the flight
> after the attempt or commission.

(Emphasis added.)

Here, there was sufficient evidence that Iopa's actions were "in the course of committing theft." At trial, Desa identified Iopa as the "vocal" male who threatened him on the night of the incident. Desa testified that he awoke to someone repeatedly yelling "Get out of your fuckin' tents, you fuckin' haoles. Get out of your tents." Two males approached their camping area. One male was shadowboxing and bouncing back and forth as if he was going to fight and the other more vocal male, later identified by Desa as Iopa, repeatedly said, "Get the fuck out of your tents," "You fuckin' haoles," "We hate haoles." He continuously stated, "You fuckin' haoles. We hate haoles. Um, give us your fuckin' money. You guys get drugs? I know you guys get drugs. I know you guys have money[.]" Desa testified that Iopa demanded money, asked for drugs, and asked for juice.

At trial, B. Mead positively identified Iopa as the "vocal male" with a nasally voice who demanded items from him on the night of the incident. That night, he awoke to males yelling "Come on, you haoles. Let's go. You fuckin' haoles, you -- you stole our land. Come on. Let's -- let's go. It's -- I'm gonna pound you out." The males approached their tents. The more "vocal" male, later identified by B. Mead as Iopa, said things like "Come on, you fuckin' haoles. Let's go. I'm gonna pound you out. Get out of your tents. Let's go." He also said he was going to kick B. Mead in the mouth and demanded wallets, money, flashlights, drugs, and juice.

At trial, L. Mead positively identified Iopa as the "vocal male" who threatened him on the night of the incident. That night, he awoke to shouting and fighting. A group of males then approached their campsite. From what he could tell, they were saying, "Fuckin' haoles. Uh, you guys come into our land. Um, you guys stole our land." Then they stated "Get out the tents. Get out the tents. Open the tents." The more "vocal" male was closest to his tent and continuously stated "Get out of the tent" and "What, you fuckas?" L. Mead testified that the "vocal" male wanted flashlights, juice, alcohol, and wallets, and L. Mead felt extremely threatened when these things were being demanded.

Based on the evidence in the record, there is sufficient evidence as to the challenged theft component of Robbery in the First Degree.

Moreover, with regard to Iopa's intent to attempt theft,

> although a defendant's state of mind can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient. Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.

State v. Gomes, 117 Hawaiʻi 218, 227, 177 P.3d 928, 937 (2008) (citations, quotation marks, and ellipsis omitted).  The circumstantial evidence and reasonable inferences arising from the circumstances surrounding Iopa's conduct are sufficient to establish Iopa's requisite state of mind for the offense.

Therefore,

IT IS HEREBY ORDERED THAT the Judgment of Conviction and Sentence, filed on October 28, 2010 in the Circuit Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, June 4, 2013.

On the briefs:

Vaughan S. Winborne Jr.
for Defendant-Appellant

Darien W.L.C. Nagata
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

13